

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BLAIR JONES,
        Plaintiff,

v.

SOUTHWEST CREDIT SYSTEMS,
        Defendant.

CIVIL ACTION
NO. 17-487

## OPINION

**Slomsky, J**                                                                             **October 18, 2017**

### I. INTRODUCTION

Plaintiff Blair Jones brings this action against Defendant Southwest Credit Systems, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.[1] (Doc. No. 1.) Defendant now moves for summary judgment. (Doc. No. 14.) For reasons that follow, the Court will deny Defendant's Motion for Summary Judgment (Doc. No. 29).

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a consumer who resides in Philadelphia, Pennsylvania. (Doc. No. 1 ¶ 5.) Defendant Southwest Credit Systems ("SWC") is a Pennsylvania collection agency and is a "debt collector" under the FDCPA. (Id. ¶ 10; see also Doc. No. 14-3 ¶1.) In February[2] 2016,

---

[1] In his Complaint, Plaintiff alleges violations of the Fair Debt Collection Practices Act ("FDCPA") and the Telephone Consumer Protection Act ("TCPA"). (Doc. No. 1.) In his Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 16-1), Plaintiff notes that as of September 14, 2017, he is dropping the TCPA claim because "the cost of an expert to disprove Defendant's affidavits would likely exceed possible TCPA recovery." (Id. at 1-2.) Accordingly, the Court will only discuss hereafter the FDCPA claims.

[2] Plaintiff's Complaint alleges that Defendant placed calls to him "[b]eginning in early to mid-January 2016 and continuing through February 2016" (Doc. No. 1 ¶ 14). However, in his

SWC repeatedly had a representative call Plaintiff in an attempt to collect a debt arising from his Comcast cable subscription. (Doc. No. 1 ¶¶ 13-15.) He alleges that he received ten calls over eighteen days which, he argues, was harassment in violation of the FDCPA. (Doc. No. 16-1 at 4.) In his Complaint, Plaintiff states that he received calls consisting of pre-recorded messages followed by a live caller and, though he instructed the caller to stop calling him, the calls continued. (Id. ¶¶ 17-22.) He further alleges that Defendant failed to send him written correspondence advising him of his rights to dispute the Comcast debt and to request verification of the debt within five days of its initial communication with him, as required by § 1692(g)(2) of the FDCPA. (Id. ¶¶ 24; 5-6.) Plaintiff also claims that Defendant continued to call and harass him despite his demand for the calls to stop. (Doc. No. 1 ¶ 23.)

On August 31, 2017, Defendant filed a Motion for Summary Judgment, contending that it had not violated the FDCPA. (Doc. No. 14-2.) In its Motion, Defendant claims that on February 6, 2016, it sent Plaintiff a collection letter informing him that his Comcast account—delinquent in the amount of $163.44—had been placed with Defendant for collection and included information about the balance which was due and owing. (Id. at 4.) Defendant also asserts that Plaintiff failed to present sufficient evidence to show that it had made calls with the intent to harass, annoy, or abuse him. (Id. at 2.) Thereafter, on September 14, 2017, Plaintiff filed a Response in Opposition to the Motion for Summary Judgment. (Doc. No. 16.) The Motion for Summary Judgment is now ripe for review.

---

Response to Defendant's Statement of Material Facts (Doc. No. 16-3), he notes that Defendant's representatives placed ten calls to his cellular telephone between February 4, 2016 and February 22, 2016, a period of eighteen days. (Id. ¶ 10.)

2

## III. STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, the court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 271 (3d Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the non-moving party. Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. Doe v. Luzerne Cty., 660 F.3d 169, 175 (3d Cir. 2011) (citing Gray v. York Papers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247-49.

In deciding a motion for summary judgment, the Court must view the evidence and all reasonable inferences from the evidence in the light most favorable to the non-moving party. Macfarlan, 675 F.3d at 271; Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. Anderson, 477 U.S. at 255. If there is no factual issue and if only one reasonable conclusion could arise from the record regarding the potential outcome

3

under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

IV.  **ANALYSIS**

   **A. A Genuine Disputed Issue of Material Fact Exists as to Whether Defendant Employed Tactics Designed to Embarrass, Harass, Upset, or Otherwise Harass Plaintiff.**

Congress enacted the FDCPA to provide a remedy for victims of abusive, deceptive, and unfair collection practices by debt collectors. Lesher v. Law Offices of Mitchell N. Kay, P.C., 650 F.3d 993, 996-97 (3d Cir. 2011). The purpose of the statute was to address inappropriate tactics employed by debt collectors, oftentimes leading to "personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Campuzano-Burgos v. Midland Credit Mgmt. Inc., 550 F.3d 294, 298 (3d Cir. 2008).

Section 1692d of the FDCPA provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Moreover, § 1692d(5) specifies that "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" is a violation of the provision. 15 U.S.C. § 1692d(5). Generally, what constitutes harassment or abuse is a question that must be answered by the jury. Hoover v. Monarch Recovery Mgmt., 888 F. Supp. 2d 589, 596 (E.D. Pa. Aug. 24, 2012) (citing Regan v. Law Offices of Edwin A. Abrahamsen & Assocs., P.C., 2009 WL 4396299 (E.D. Pa. Dec. 1, 2009). Moreover, in determining whether such harassment exists, an inquiry must be made not only into the volume of the calls made, but also into the pattern or frequency of the calls. Shand-Pistilli v. Prof'l Account Servs. Inc., 2010 WL 2978029 (E.D. Pa. Jul. 26, 2010). However, under the FDCPA, a

4

plaintiff is not permitted to present "bizarre or idiosyncratic interpretations of collection notices" and is presumed to possess "a basic level of understanding and willingness to read with care." Wilson v. Quadramed Corp., 225 F.3d 250 (3d Cir. 2000).

Plaintiff alleges that Defendant caused his phone to ring continuously, and that this conduct constitutes harassment. He claims that after Defendant's representatives contacted him twice on February 5, 2016, Plaintiff agitatedly informed Defendant's representative during a February 6,[3] 2016 call, saying "why you calling... I don't wanna know your name... what do you want from me." (Id. at 5-6.) During this call, he refused to provide any information when asked by the caller and abruptly hung up. (Id.) In Plaintiff's view, his incensed tone and actions conveyed that he wanted the calls to end. Despite this, Defendant's representatives called him four times on February 11 2016, three times on February 15, 2016, and once on February 19, 2016. (Doc. No. 16-1 at 5.) Many of these calls were made in rapid succession of one another. When Defendant continued to call after February 5, 2016, Plaintiff asserts that it was harassment.

Though Defendant does not dispute the amount of calls made, it does challenge Plaintiff's assertion that it employed tactics designed to embarrass, upset, or otherwise harass him. Furthermore, it claims that Plaintiff has provided an insufficient basis for his claim,

---

[3] In his Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, Plaintiff refers to the various dates and times when Defendant's representatives called him: February 5, 2016 (two calls); February 11, 2016 (four calls); February 15, 2016 (three calls); February 19, 2016 (one call). (Doc. Nos. 16-1; 16-3.) In addition, he claims that Defendant's representatives also called him once on February 18, 2016 and again on February 22, 2016, but Plaintiff hung up. (Doc. No. 16-1) He further states that he "angrily called" Defendant's representatives on February 5, 2016 and February 8, 2016. (Id.) Plaintiff mentions a February 6, 2016 call in his Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 16-1 at 5) during which the exchange with Defendant's representative took place; however, in his Response to Defendant's Statement of Material Facts in Support of Defendant's Motion for Summary Judgment, it appears this exchange occurred during the February 8, 2016 call, which he initiated. (Doc. No. 16-3 at 20.)

emphasizing his lack of recollection as to "whether [Defendant's] employees he spoke with were men or women, the number of conversations he had with [Defendant's] personnel, or when, specifically, his alleged discussions with [Defendant's] representations [sic] took place." (Doc. No. 14-2 at 19.) Though Defendant is correct that calls to a debtor after he verbally requests that they cease do not automatically trigger a violation of § 1692d(5), there still may be a finding of an intent to annoy when examining the frequency of the calls. See Shand-Pistilli v. Prof'l Account Servs. Inc., 2010 WL 2978029 (E.D. Pa. July 26, 2010) (holding that an unspecified amount of "continuous calls" was sufficient to plead a plausible claim for relief under section 1692d(5)); see also Carr v. NCO Fin. Sys., Inc., 2011 WL 6371899 (E.D. Pa. Dec. 20, 2011) (finding that a pleading containing facts showing that a defendant debt collector placed nine calls in a period of approximately thirty days was sufficient to plausibly show that defendant caused the telephone to ring with an intent to annoy or abuse).

Therefore, a genuine dispute exists as to whether Defendant intended to annoy, abuse, or harass Plaintiff when calling him repeatedly regarding his debt collection notice.

### B. A Genuine Disputed Issue of Material Fact Exists as to Whether Defendant Presented Plaintiff with a Collection Notice.

In enacting the FDCPA, Congress sought to eliminate abusive debt collection practices through another provision in the statute. To this end, Congress adopted "the debt validation provisions of section 1692g" to guarantee that consumers would receive "adequate notice" of their rights under the FDCPA. Caprio v. Healthcare Recovery Grp., LLC, 709 F.3d 142, 148 (3d Cir. 2013). To provide consumers with "adequate notice" of their rights under § 1692g(a), a debt collector must include the following information in its initial communication to a debtor, or in a communication to be sent within five days after the initial communication:

6

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

The purpose of the validation notice is to inform a debtor of his rights and obligations to his creditors. Oppong v. First Union Mortg. Corp., 566 F. Supp. 2d 395, 400 (E.D. Pa. 2008), aff'd 326 F.App'x. 663 (3d Cir. 2009).

Here, Plaintiff alleges that he never received such a notice or any written correspondence whatsoever advising him of the debt, his rights to dispute the debt, and his ability to request verification of the debt within five days of its initial communication with him, as required by § 1692g(a). (Doc. No. 1 ¶ 24.) Defendant asserts to the contrary that on February 6, 2016, it sent Plaintiff a collection letter informing him that his Comcast account was placed with Defendant for collection and provided detailed information regarding the amount due and owing. (Doc. No. 14-3 ¶ 34.) The collection letter also advised Plaintiff of his right to dispute the validity of the debt or any portion thereof. (Id. ¶ 35.) According to Defendant, the day after its initial communication with Plaintiff, the letter was sent to his residence and it was never returned as undeliverable. (Doc. No. 14-2 at 17-18.) The question of whether Defendant provided Plaintiff

7

with a collection notice directly is relevant to determining whether § 1692g(a) was violated. Therefore, there is a genuine dispute of material fact between the parties on this issue.

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 14) will be denied. An appropriate Order follows.